# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **KELLY SCHULTZ,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**DIGITAL MEDIA SOLUTIONS, LLC,** a Delaware company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Kelly Schultz ("Plaintiff Schultz" or "Schultz") brings this Class Action Complaint and Demand for Jury Trial against Defendant Digital Media Solutions, LLC ("Defendant DMS" or "DMS") to stop the Defendant from violating the Telephone Consumer Protection Act by sending telemarketing text messages *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff Schultz, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Schultz is a Zimmerman, Minnesota resident.

2. Defendant DMS is a Delaware company headquartered in Clearwater, Florida. Defendant conducts business throughout this District, Florida, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is based in this District and because the wrongful conduct giving rise to this case was directed to Plaintiff from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in June 2021 alone, at a rate of 148 million calls per day. www.robocallindex.com (last visited on July 19, 2021).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

3

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. Defendant DMS is a provider of technology-enabled digital advertising solutions.[3]

16. Defendant DMS owns and operates the website www.quotza.com, which provides auto insurance quotes from various insurance providers.[4]

17. The Terms and Conditions page on the quotza.com website states that the website is a property of Digital Media Solutions, and it also mentions the exact

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/digital-media-solutions-inc/about/
[4] https://quotza.com/terms.php

4

same office address at which Defendant DMS is registered, i.e., 4800, 140th Ave N., STE 101, Clearwater, FL 33762.

18. Defendant DMS places cold calls and sends unsolicited telemarketing text messages with shortened web links which redirect consumers to their websites to solicit Defendant's products, including but not limited to, Quotza.com, which sells auto insurance quotes, as in the case of Plaintiff Schultz.

19. Defendant DMS sends such unsolicited telemarketing text messages to hundreds if not thousands of consumers without receiving their prior consent, including consumers whose cell phone numbers are registered on the National Do Not Call Registry, as Plaintiff Schultz.

20. Terms and Conditions page on the Quotza.com website provides a way for consumers to out-out of receiving text messages, showing that the Defendant runs marketing campaigns using text messages through the website Quotza.com:

> **20. Text Messages.** Users may request to receive up to a maximum of ten (10) offers from Company via text message, including text messages sent by third-parties on Company's behalf, on selected days of the week. Supporting carriers include AT&T®, Sprint®, Verizon®, Carolina West®, Nextel®, Celicom®, Virgin Mobile®, C Spire®, Boost®, Cincinnati Bell®, Metro PCS®, T-Mobile®, Cricket®, U.S. Cellular® and other wireless carriers.
>
> **Consumers may opt out of receiving text messages by replying "STOP," "END" or "QUIT" to any SMS message that they receive. No other words or combination of words will achieve a successful opt out result. Consumers may also reply with "HELP"; email us at: info@thedmsgrp.com; or call us at: (800) 719-5930 for support. Standard message and data rates may apply to any text/SMS communication.** [5]

21. Employees of Defendant DMS have posted reviews in which they mention how Defendant DMS made them place calls to consumers without consent. For instance:

---

[5] https://quotza.com/terms.php

> **Culture has more in common with a Chinese factory than a tech startup**
>
> May 4, 2021 - Account Manager in San Diego, CA
>
> ✗ Recommend  — CEO Approval  ✗ Business Outlook
>
> **Pros**
> Pay is decent, job isnt difficult if you dont mind selling an awful product.
>
> **Cons**
> HR & management for the most part, are very dishonest. There is ZERO company culture outside of 30 minutes each Tuesday where the CEO talks about himself. On Management: They managed to run off most of the top performing team in the entire company within the last 2-3 months. In my last week on the job I received several phone calls from angry consumers asking how we received their information. When you're hired, they'll tell you that all consumer information is input by the consumer. This is most likely not the case. Nor are their leads always real-time. You know those random spam calls you get? These are the people who sell your data.[6]

22. Aggrieved consumers have posted complaints about receiving unwanted solicitation calls and texts from the Defendant. Here are some such complaints regarding unsolicited calls received from the Defendant:

- "Many unwarranted calls from this company… have my phone number on a 'do not call' registry – but it keeps coming through. Most annoying company ever."[7]

- "unwanted text by digital media solutions they are repeat violators of TCPA they have sent multiple txt to my phone. I am on the DNC Digital media solutions have sent unwanted text to my phone multiple times. They have violated the TCPA over and over again these text are unwanted and i have sent demand letter for the violations"[8]

---

[6] https://www.glassdoor.com/Reviews/Digital-Media-Solutions-Reviews-E1032726.htm
[7] https://www.bbb.org/us/fl/clearwater/profile/digital-marketing/digital-media-solutions-0653-90332012
[8] https://www.bbb.org/us/fl/clearwater/profile/digital-marketing/digital-media-solutions-0653-90332012/complaints

6

- "Contacted me on my cell phone via text message, even though my phone is on the National Do Not Call registry. On July 8th I received a text message from an unknown number (484-290-0061) saying "Now, get started here" with a hyper link directing me to a DMS affiliated company called Classes and Careers (www.classesandcareers.com). I never agreed to opt-in to this business's messaging service, and on top of that my phone number is on the National Do Not Call Registry. They shouldn't have contacted me, and have broken the law in doing so."[9]

- "The Credit People Company has been sending harassing text through a myriad of phone numbers which are considered spam calls. They are soliciting my child through these spam text to fix his credit report. I think it is a criminal act to solicit a child because it can cause harm if the child is unaware of the situation. I've tried to remove our phone number by phone and electronically. They refuse to stop harassing us. If this issues is not handled I will be forced to find an attorney for harassment and solicitation. Product_Or_Service: Advertisement"[10]

---

[9] https://www.bbb.org/us/fl/clearwater/profile/digital-marketing/digital-media-solutions-0653-90332012/complaints
[10] https://www.bbb.org/us/fl/clearwater/profile/digital-marketing/digital-media-solutions-0653-90332012/complaints

7

23. Aggrieved consumers have also posted complaints specifically about receiving unsolicited telemarketing texts from Quotza, including text messages similar to those received by Plaintiff Schultz. For instance:

-  [11]

- "POS text scam operation."[12]

- "These guys have been spamming me with texts for weeks, always with different links. It's fishing as heck and this is definitely just a scam."[13]

- "I'd give them negative stars if possible. I'm bombarded by spam texts from them and their stupid spammer henchmen and I've never even been to their site."[14]

### PLAINTIFF'S ALLEGATIONS

---

[11] https://www.scam-detector.com/quotza-scam/
[12] https://www.trustpilot.com/review/quotza.com
[13] *Id.*
[14] *Id.*

24. Plaintiff Schultz registered her cell phone number on the DNC on March 25, 2017, so that she would not receive unsolicited calls and text messages.

25. Plaintiff Schultz's cell phone number is not associated with a business and is used for personal use only.

26. On January 15, 2021, at 11:39 AM, Plaintiff Schultz received an inappropriate text message from the Defendant from the phone number (763) 310-4976, with a hyperlink in it:



Screenshot from January 15, 2021

27. On January 15, 2021, at 7:29 PM, Plaintiff Schultz received the second such text message from the Defendant from the phone number (702) 715-4881, with a hyperlink in it:



Screenshot from January 15, 2021

28. On January 16, 2021, at 1:28 PM, Plaintiff Schultz received the third such text message from the Defendant from the phone number (725) 224-1273, stating, "My team tried to increase your auto indemnity policy Kelly! Check before you are too late: io5e9.com/xrJy1":

9



Screenshot from January 16, 2021

29. On clicking each of these three hyperlinks received in the text messages sent to Plaintiff Schultz cell phone, the user was redirected to a webpage on the Defendant's website, www.quotza.com, through which Defendant DMS sought to acquire consumers' information to solicit auto insurance products to them.

30. Plaintiff Schultz has never provided her phone number or her consent to be contacted by the Defendant via calls or text messages.

31. Plaintiff also has no prior business relationship with the Defendant.

32. The unauthorized solicitation text messages that Plaintiff received from Defendant DMS, as alleged herein, have harmed Plaintiff Schultz in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redressal for these injuries, Plaintiff Schultz, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited

telemarketing text messages and calls to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS
### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From the Defendant's Actions

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

35. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

36. **Typicality and Numerosity**: On information and belief, there are thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the class that received texts as a part of the same telemarketing campaign as other members of the Class.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) whether Defendant DMS systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the texts;

b) whether Defendant's texts to Plaintiff and other consumers were for telemarketing purposes;

c) whether Defendant's conduct constitutes a violation of the TCPA; and

d) whether members of the Class are entitled to treble damages based on the wilfulness of Defendant's conduct.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her

counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

39. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Schultz and the Do Not Call Registry Class)

40. Plaintiff repeats and realleges the allegations in the preceding paragraphs of this complaint and incorporates them by reference

41. Defendant sent multiple unwanted solicitation text messages to the Plaintiff and other members of the Do Not Call Registry Class within a 12-month period.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation." To "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. Any "person who has received more than one telephone call within 12-month period by or on the behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

44. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the

Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

46. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

47. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Class;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**KELLY SCHULTZ**, individually and on behalf of those similarly situated individuals

Dated: July 22, 2021

*/s/Stefan Coleman*
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor,
Miami, FL 33131
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Trial counsel

*Attorneys for Plaintiff and the putative Class*